UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| United States of America | ) | |
| | ) | |
| v. | ) | USDC No. 25-cr-267 (RC) |
| | ) | |
| Tyzell Myrick,  *defendant*. | ) | |

MOTION TO SUPPRESS EVIDENCE OBTAINED
AS THE RESULT OF AN ILLEGAL SEARCH

    Defendant, through undersigned counsel Nathan I. Silver, II, Esq. ("counsel"), appointed by this Court under the Criminal Justice Act, hereby moves the Court to suppress evidence that was seized as the result of an illegal stop, frisk and search, by law enforcement in this case. The defendant contends that the officers involved did not (1) have "a reasonable articulable suspicion that criminal activity was afoot," *Terry v. Ohio,* 392 U.S. 1 (1968); *see also Illiinois v. Wardlow*, 528 U.S. 119, 123 (2000). The officers did not otherwise have a basis for stopping and making a warrantless search of the defendant's person; and that statements the defendant made in the course of his stop and arrest are "the fruit of the poisonous tree." *Wong Sun v. United States*, 371 U.S. 471, 484 (1963). The reasons follow.

    1. The defendant was arrested at roughly midnight on August 17, 2025, at a gas station located on the corner of 9th Street and Florida Avenue, N.W. in Washington, D.C. He was found in possession of a firearm. As one with a previous felony conviction, he was charged, later indicted, with Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year, in violation of 18 U.S.C. 922(g)(1).

2. Off. Chase Williams of the Metropolitan Police Department ("MPD") reported in that "MPD officers were conducting a patrol at 908 Florida Ave…when they observed TYZELL MYRICK ("MYRICK") emerge from a gas station. Your affiant immediately observed a large rectangular bulge in MYRICK's front waistband that was inconsistent with human anatomy." ("Statement of Facts," ECF Doc. 1-1, August 18, 2025 - page 1, ¶1)

2. Off. Williams further reported that the defendant made a gesture to prevent the officers from seeing the bulge, then turned around and walked away from them: "MYRICK bladed his front waistband from the officers by turning around and walking away from the officers to the wall of the gas station." (Id. ¶2) Off. Williams then stopped the defendant and "proceeded to conduct a protective pat down for his safety. Your Affiant immediately detected the presence of a handgun during the patdown of MYRICK's pants." (Id.)

3. At the time Off. Williams or other officers approached, the defendant was facing the wall of the gas station, the location of an air pump, which he needed to use to inflate the tire of the vehicle he had arrived in.

3. The defendant disputes the account of Off. Williams. Specifically, he denies that the front of his pants had a "large rectangular bulge," or any bulge for that matter, that would arouse the officers' suspicion that he possessed either a firearm or other weapon that could produce such an impression. He also denies that he made *any* kind of gesture designed to cover the front of his pants, one that would make an observer think he was hiding something.[1]

---

[1] This case may be distinguished from *United States v. Goddard,* 05-3080 (D.C. Cir. 2007). There, "[a]s the officers exited their car, Goddard "held the right side of his waistband, like he was holding . . . a gun." . Further, while "[a]pproaching the group of men, one of the officers overheard Goddard say he had a gun." (page 3) (citation to transcript omitted) The defendant, of course, denies having made such a gesture that the officers could reasonably interpret as an act of concealment.

4. The defendant, through counsel, has been provided with pretrial discovery materials by the government. These materials include video from body worn cameras ("BWC"), recorded radio transmissions, and police reports. Counsel's examination of the BWC video does not, so far as counsel can tell, appear to depict either a bulge on defendant's clothing or a gesture that would suggest concealment.

5. The police conducted a patdown, then a search of the defendant. They recovered a firearm, a Glock 22 .40 caliber pistol…loaded with one round of .40 caliber ammunition in the chamber and an additional 20 rounds in the 22 round capacity magazine." (Id., page 2, ¶3)

6. The BWC videos show that it took the officers some time and trouble to discover and retrieve the gun. It was not located in the defendant's waistband, with its handle or barrel at or above the waistband.

7. The U.S. Court of Appeals for the D.C. Circuit provided a useful summary of the inquiry required in challenges to *Terry* stops, those which are done without probable cause to search and seize but rather for the protection of officers:

"Analysis of these events begins with Terry v. Ohio, 392 U.S. 1 (1968), a decision that, by last count, has been cited in nearly 48,000 federal and state court opinions. Terry holds that in stopping a person on the street to investigate, law enforcement officers "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Id. at 21. "Reasonable suspicion," the Supreme Court has reminded us, is a standard that is "'not readily, or even usefully, reduced to a neat set of legal rules.'" Ornelas v. United States, 517 U.S. 690, 695 (1996) (quoting Illinois v. Gates, 462 U.S. 213, 232 (1983)). Justice Scalia made the same point in Ornelas when he wrote of "the futility of attempting to craft useful precedent from the fact-intensive review demanded by determinations of . . . reasonable suspicion." Id. at 703 (Scalia, J., dissenting)." *United States v. Douglas,* No. 21-3032, decided July 7, 2023 at page 7 (*per curiam*)

8. The Fourth Amendment protects "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures…." U.S. Const. Amend IV. When searches are conducted without prior approval of a judge or magistrate, they are *per se* unreasonable, and may be sanctioned only when "subject…to a few established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967). When acting without a warrant, the government must show that the officers' actions are constitutional. *See United States v. Jeffers*, 342 U.S. 48, 51; *see also United States v. Castle*, 825 F.3d 625, 634 (D.C. Cir. 2016) When the admission of such evidence is challenged, the government has the burden to prove that the evidence corresponds to one of a "few specifically established and well delineated exceptions." *Coolidge v. New Hampshire*, 403 U.S. 443, 455 (1971; *Katz*, Id.[2]

9. The defendant was seized when the officers stopped the defendant, placed him in handcuffs, and proceeded to attempt to discover whatever was on his person, specifically in his pants, which were fastened at the waist with a belt. Though the police did not then have probable cause, he was under arrest at that point. For an arrest, probable cause is an essential prerequisite. *Dunaway v. New York*, 442 U.S. 200, 213 (1979) When the officers took those measures, the defendant submitted to their authority, did not resist, and remained composed. *See California v. Hodari D,* 499 U.S. 621 (1991).

10. The recovery of the firearm, and the admission the defendant made afterwards, during this unconstitutional search and seizure are therefore "fruit of the poisonous tree," and must be suppressed. *Wong Sun v. United States* at 484; *United States v. Matthews*, 753 F.2d 1321, 1324 (D.C. Cir. 2014)

---

[2] There were no other circumstances at the time that would indicate there was criminal activity at the gas station that would contribute to the officers suspicion. *See United States v. Jones*, No. 07-3025 (decided Oct. 23, 2009), in which police made a *Terry* stop of the appellant, who appeared to be in possession of an open container of alcohol, a local D.C. misdemeanor offense ("POCA"). The Court found that, without more, this was insufficient to justify a *Terry* stop, but that the subsequent actions and statements by the appellant supported a reasonable suspicion that the defendant was committing an offense (at the very least, POCA, as he had told the officer "I'm just drinking" when the officer approached). *Jones* at page 7.

WHEREFORE, the defendant moves the Court to grant said relief.

A proposed Order is attached.

This pleading is,

       Respectfully submitted,

      *Nathan I. Silver*

      NATHAN I. SILVER, II
      Unified Bar #944314
      6300 Orchid Drive
      Bethesda, MD 20817
      (301) 229-0189 (direct)
      (301) 229-3625 (fax)
       email: nisquire@aol.com

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing pleading has been served via ECF on David B. Liss, Esq., attorney of record, U.S. Attorney's Office for the District of Columbia, this 21st day of October, 2025.

      *Nathan I. Silver*
      _____
       *Nathan I. Silver, II*